SINGER MANUF'G Co. *v.* RILEY and others.

*(Circuit Court, W. D. Tennessee. April 7, 1882.)*

TRADE-MARK—USE OF TRADE NAME AND MARK—AFTER PATENT EXPIRED.

Where a patentee uses his name and marks to designate his invention, and also the product of it, as manufactured by himself, so that the public cannot separate the one from the other, he cannot acquire any right to the exclusive use of the name and marks after the patent has expired. *Held,* therefore, that the Singer Manufacturing Company, of New Jersey, has no exclusive property or trade name in the word "Singer," and that their shuttle device, as a trade-mark, had not been violated by the devices used on the Williams machine, of Montreal, or the Sigwalt machine, of Chicago, the alleged imitations not being calculated to deceive a purchaser.

In Equity. Application for injunction.

The bill and amended bill allege that the plaintiff manufactures and sells "Singer Sewing-Machines;" has done so for many years, in all the countries of the world; and that by their excellence the machines have acquired a valuable reputation. It claims a *trade name* for the use of the word "Singer," and alleges that the defendants are fraudulently using it for purposes of injury to the plaintiff and to deceive the public. They also claim a *trade-mark* in certain devices described in the bill, which it is alleged the defendants have violated. The prayer is for an injunction. The answer denies that the defendants have ever pretended to sell machines of plaintiff's manufacture, and avers that they sell machines as good or better in point of manufacture. But defendants admit that they do use the name "Singer," either alone or in combination with other descriptive names of machines they sell. They explain this by averring that one Singer procured a patent for an invention of sewing-machines of great excellence of mechanical construction, and enjoyed a monopoly of the patent for many years, until recently, when the patent expired and congress refused to renew it; that this peculiar patented construction was from the beginning designated by the word "Singer," and the

name was used to describe it throughout the world.   Defendants aver that they have always been careful not to represent their goods as manufactured by the plaintiff, nor to deceive any one on that point. They deny the use of the same devices or such similar ones as are calculated to deceive, and produce samples of their own and plaintiff's machines in support of the denial.   Affidavits are filed with both the bill and answer, and also the circulars and advertisements of the defendants.

*U. W. Miller,* for plaintiff, cited:

*Coates* v. *Halbrook,* Cox, Trade-mark Cases, 20, 27; *Taylor* v. *Carpenter,* Id. 45, 57; *Coffeen* v. *Brunton,* Id. 85, 86; *Davis* v. *Kendall,* Id. 114; *Howard* v. *Henriques,* Id. 129; *Walton* v. *Crowly,* Id. 172; *Brooklin White Lead Co.* v. *Mansury,* Id. 210; *Clark* v. *Clark,* Id. 210; *Dale* v. *Smithson,* Id. 282; *Colton* v. *Thomas,* Id. 507; *Amoskeag Manuf'g Co.* v. *Garner,* Id. 540; *Dixon Crucible Co.* v. *Guggenheim,* Id. 559, 562, 569; *Congress Spring Co.* v. *High Rock Spring Co.* Id. 599, 624; *Filley* v. *Fassett,* Id. 530; S. C. 44 Mo. 168; *Holmes* v. *Holmes,* 27 Ct. 278; *Meriden Britannia Co.* v. *Parker,* 39 Ct. 450; *Newby* v. *Oregon Cent. R. R.* 1 Deady, 609; *Kimball* v. *Singer Manuf'g Co.* 45 Scottish Jurist, 201; *Dunbar* v. *Glenn,* 42 Wis. 134; *Canal Co.* v. *Clark,* 13 Wall. 322; *McLean* v. *Flemming,* 96 U. S. 245, 251; *Braham* v. *Bustard,* 1 Hem. & Miller, 447; *Eddleton* v. *Fick,* 23 Eng. L. & Eq. 51; *Singer Manuf'g Co.* v. *Wilson,* 3 App. Cas. L. R. 389; *Witthaus* v. *Mattfeld,* 44 Md. 303; Brown, Trade-marks, pp. 33, 34, §§ 396, 496; Coddington, Trade-mark Dig. 415, 416, 418, 429, 453; *Singer Manuf'g Co.* v. *Larsen,* 13 Chi. Leg. N. 59; *U. S.* v. *Roche,* 1 McCrary, 385; 2 Daniell, Ch. 1648, *et nota;* 3 Wait, Ac. & Def. 195, 741, 742; 20 Am. Law Reg. 34; 9 Reporter, 603, 737; *Patridge* v. *Menck,* 2 Barb. 101; *Fronks* v. *Weaver,* 10 Beav. 297; *Singer Manuf'g Co.* v. *Brill,* Superior Ct. Cincti. July term, 1880; *Singer* v. *Lemaire,* Belgium MSS.; *Warren* v. *Wing,* Superior Ct. N. Y. Referee's Report Jan. 13, 1881; *Singer Manuf'g Co.* v. *Phillips,* Ky. Dist. Oct. 11, 1880; *Singer Manuf'g Co.* v. *Kayser,* N. Y. Supreme Ct. Jan. 1879.

*H. F. Dix* and *W. W. Goodwin,* for defendants, cited:

*Bell* v. *Locke,* 8 Paige, 75; *Fairbanks* v. *Jacobs,* 14 Blatchf. 337; *Singer Manuf'g Co.* v. *Wilson,* L. R. 2 Ch. Div. 434; *Tucker Manuf'g Co. Case,* 9 O. G. 455; *Singer Manuf'g Co.* v. *Stanage,* 6 FED. REP. 297; *Singer Manuf'g Co.* v. *Loog,* London Daily News, Dec. 15, 1880; *Manuf'g Co.* v. *Trainer,* 101 U. S. 51.

HAMMOND, D. J.   The application for a preliminary injunction must be denied.   The case of *Singer Manuf'g Co.* v. *Stanage,* 6 FED. REP. 279, so fully expresses the conclusions to which I have come that it is not necessary to repeat the argument to be there found in favor of this judgment, although I have given the subject an extensive investigation.   The bill before me would, perhaps, entitle the.

plaintiff to an injunction, for it makes no mention of any patent, nor any reference to the fact that for many years the plaintiff's manufacture of sewing-machines was thus protected, whatever may be said of those patents in their relation to the question of fact, which the house of lords was unable to determine in *Singer* v. *Wilson*, L. R. 3 App. Cas. 376.

The answer, however, avers that the plaintiff used its alleged trade name and trade-marks to designate the principles of construction of sewing-machines under the patents, and, while denying all allegations of misrepresentation and deceit, explains that the defendants only used the name "Singer" to represent that the machines sold were of that construction, and never to represent that they were machines manufactured by the plaintiff. The affidavits of plaintiff's witnesses only show that the defendants represented theirs as genuine "Singer" machines, and are not inconsistent with the averments of the answer; while the defendants' witnesses swear that they were told that the machines were of superior manufacture to those of the plaintiff, but that they were "Singer" machines. Hence, however the proof at the hearing may affect the case, as it now stands there can be no injunction in any view of the question.

So, in reference to the labels and other devices claimed as trade-marks, the proof here is not satisfactory of any counterfeiting or misrepresentation by defendants. The respective machines have been brought into court, and I must say I do not see how any person could be deceived by mistaking one for the other, if any reliance is placed on the devices as distinguishing characteristics. It is true, the general appearance of the machines is somewhat the same, as two tables or desks are alike, but even here some of the defendants' machines are dissimilar to those of the plaintiff in having the box used to cover the machinery on the table ornamented with moulding. The labels affixed to the arms of the machines are in no way alike, except that they are brass and oval, and are placed in relatively the same spot on the machines. The well-known device of the plaintiff, consisting of a shuttle, needles crossed, and the letter S made with the representation of the thread surrounded by a partial wreath of a plant and the words "The Singer MFG. Co." and "Trade-Mark," is replaced in the other labels by entirely dissimilar devices. The one is a lion's head in bold relief, surrounded by the words "C. W. Williams MFG. Co., Montreal," and "Trade-Mark," while the other is a monogram of S. and M. upon a rough, flat surface, made by a chasing of parallel horizontal lines, surrounded with a raised dotted line, indented at

opposite sides in the shape of a small segment of a circle, the words "The Sigwalt Sewing Machine Co., Chicago, Ill." being imprinted around the entire device.

The said shuttle device is also cast in the frame-work of the leg or stand of one pattern of the plaintiff's machine. It is, of course, in that form more rude, but is plainly enough recognizable as the same device as that on the brass label. The corresponding device on the Williams machine is a large and well-defined horseshoe, surrounding the letter S (broad in its construction, and in no way resembling the S of the shuttle device) and the word "Trade-Mark."

I am well aware that mere dissimilarity of detail is not a defence in cases like this, and the location of the mark on the package or article has much to do with the intention to deceive. Some of the cases have carried this principle to a great length, to prevent the fraud of using another's trade name or labels, or even form of packages. But the fraud consists in an imitation calculated to deceive, and I think none of the best-considered cases would hold that a trader could acquire an exclusive right to use an oval brass label on the fore-arm, and the letter S on the leg, of a sewing-machine. It must be so ruled to declare against these devices of the defendants' machines, for they are not otherwise like those of the plaintiff.

The precise attitude of the English cases on this question is stated in a review of them by the Solicitors' Journal, reproduced in the Central Law Journal, vol. 11, pp. 3, 25, 84, 106. Vice Chancellor Bacon's opinion in *Singer Manuf'g Co.* v. *Loog*, L. R. 18 Ch. Div. 395, 401, in favor of the plaintiff's claim, held that the plaintiff had established a right to the word "Singer" as its trade-mark and property, and that the defendant, whose unlicensed use of the name was clearly proven, had entirely failed to show that the name "Singer" was known to the trade as descriptive of sewing-machines of a particular construction or character not necessarily of the plaintiff's manufacture. But the opinion of the court of appeals, overruling this judgment of the vice chancellor, says of the circulars and advertisements and devices, what as well applies to this case, that the documents set forth how the machines were manufactured, and there was nothing to lead any purchaser of them to suppose that he was buying machines manufactured by the plaintiff. The plaintiff company had no monopoly in the manufacture of sewing-machines, their patent having expired some years ago, nor had they any property or right in the word "Singer" in the sense that they could restrain any one from describing his goods as "Singer's," however he might qualify or ex-

plain his use of that word.   Lord Justice James said that aside from
the brass label he could not "see anything which could deceive any
human being."   In that case the label, which was voluntarily dis-
continued, unlike the labels in this case, contained upon it the
word "Singer" in combination with others calculated to deceive a
purchaser into the belief that he was buying a machine.manufactured
by the plaintiff.   L. R. 18 Ch. Div. 395, 412.

The case of *Singer* v. *Phillips,* in the circuit court for the district
of Kentucky, was *ex parte,* the bill being taken for confessed, and a
formal decree entered for the plaintiff.   There was no opinion or
judgment such as could be considered an authority binding on this
court.

Our patent laws protected the plaintiff for many years in a mo-
nopoly to that extent that it needed no trade-marks for any other pur-
pose than to designate the comparative excellence of the inventions
protected.   It and its licensees could have, while the patent lasted,
no rival manufacturers of "Singer's sewing-machines," and their work,
as manufacturers of them, could not, therefore, be brought into com-
petition with any one.   Nor do I think the suggestion of counsel that
there were many parts of the machine and principles of mechanical
action and combination not patented affects the question as long as
any part of it was so patented.   The word had come to be descrip-
tive of peculiarities, not of manufacture by a particular person, but
inherent in the machine itself, and when this is so no right to an
exclusive use can arise, whether there be a patent or not.

It is a part of the history of our inventions, known to the courts
as well as others, that the names of inventors are used to distinguish
their inventions, and there have been "Howe," "Singer," "Grover
& Baker," "Wheeler & Wilson," etc., to indicate the different kinds
of patented sewing-machines.

It is the consideration now due to the public, when the patents
have expired, that it shall have the unobstructed benefit of these in-
ventions, and there is not the least foundation in principle or reason
for allowing the patentees to continue to enjoy as much of the monop-
oly as they can save by the claim to use exclusively the trade names
and marks by which they identified and secured to themselves the
reputation of their inventions.   These go along with the invention
as a dedication to the public for purposes of description and iden-
tification, and the patentees should not by this means be permitted
to take any advantage by them where they have so commingled
their marks for the invention, and their marks for their own manu-

facture, that the public cannot separate the two as in this case. The following additional authorities may be instructively consulted on the general subject. 25 Abb. L. J. 203; 21 Abb. L. J. 444; London Law Times, Jan. 1, 1881; *Levy* v. *Walker,* L. R. 10 Ch. Div. 436; *Singer Manuf'g Co.* v. *Loog,* L. R. 11 Ch. Div. 656; *Ewing* v. *Johnston,* L. R. 13 Ch. Div. 434; *Massam* v. *Thorley Cattle Food Co.* L. R. 14 Ch. Div. 748; S. C. Id. 736; *Pepper* v. *Labrot,* 8 FED. REP. 29; *Sawyer* v. *Kellogg,* 7 FED. REP. 720; *Sawyer* v. *Horn,* 1 FED. REP. 24; *Carroll* v. *Ertheiler,* Id. 688; *Dixon* v. *Benham,* 4 FED. REP. 527.

Injunction refused.